Next case for argument is Adams against the Harvey School District Board of Education. Mr. Gleason. Thank you your honor and may it please the court. We are here today based upon an appeal of the trial court. Denial of the post trial motions brought pursuant to federal rule civil procedure 50 B and for a due trial remitted or under a federal rule civil procedure 59. In the short time that I have with your honors this morning we'd like to focus on two points which we think are dispositive of the case. The first one here is that we believe as a matter of law the plaintiff has failed to establish that she engaged in protected speech under the First Amendment because the content context and form of her speech which is at issue in the case failed to relate to a matter of public concern. In the context of public employee First Amendment claims which this is a superintendent suing a board of education starting with pickering it's been clear that that matter of public concern is required in order to receive protection under the First Amendment. Connick v. Meyers starts to flesh this out and focuses on the content context and form of the speech. And Connick recognized that it is limited to realize the common sense realization that government office could not function if every employment decision becomes a constitutional matter which is why it has imposed this limited area of speech that is entitled to protection. This is a question of law for the court and is reviewed on a de novo basis reviewing the record as a whole. Based upon the trial record as a whole here we submit to the court that the content context and form of the speech here failed to address a matter of public concern and instead it sought to further a purely private grievance that Dr. Adams had with respect to a singular board member Mr. Tyrone Rogers because the facts with respect to this type of interaction are very brief I will reiterate them for the court. This started in in or about July of 2015 July 10th where Dr. Adams had a phone call with Mr. Rogers where he claimed where she claimed that he stated she was quote-unquote itching for an ass-kicking. Later that day she had a conversation with a police officer from the Harvey Police Department where she described that Mr. Rogers had said something inappropriate to her she didn't tell him what she had what he had said and that she wanted to talk to the board president about it because as she testified at trial she wanted to work out a solution or something that made her feel a little more comfortable about what was said. She thought about it over the weekend and decided on the following Monday July 13th 2015 that she would file a police report because quote-unquote I felt threatened I felt that my safety was a concern in the district at that point. Based upon the form content and context of Dr. Adams statement we believe that based upon the holdings of Houskins, Kubiak, Kukinis and Milwaukee Deputy Sheriff's Association versus Clark that it's not entitled to First Amendment protection. Houskins is probably the case that is factually on par most with the situation here because in that case there was a physical altercation between two employees of the Sheriff's Department one being assigned to the DOC who punched her in the face. She went and filed a police report seeking the intervention of law enforcement and the Seventh Circuit determined that that was not speech in a matter of public concern because it was serving her private or personal interest and it focused on the relevant inquiry of what the issue was was whether the public would be interested in the topic of speech but rather whether the purpose of the plaintiff's speech was to raise issues of public concern. The police report there was nothing more than her personal grievance in order to have the individual who struck her arrested which is exactly what we have here. The police report that was filed by Dr. Adams and directed against Mr. Rogers had the purpose of attempting to have Mr. Rogers arrested. It had the purpose of protecting Dr. Adams. It had nothing to do with raising issues of public concern. The court reached a similar conclusion in Kubiak versus City of Chicago. There co-workers made verbal threats of violence against one another and the court again determined that the speech in that case was not a matter of public concern and it determined a couple things that I think are important and relevant to this case. First of all the broad subject matter of the speech is not determinative. Instead the court focuses on the particular content of the speech and Kubiak, much like here, the precise context of the speech focused on the work-related incidents between the employees and concerns about the the issues that we have here. Plaintiffs have failed to point to any case law that suggests that these cases are not on point, are not applicable, and otherwise don't rule this matter. Can I ask you a question just to clarify the timeline? Absolutely. Before Ms. Adams filed her report in between the time she called the police and then filed the formal report after the weekend, had Janet Rodgers come to speak to her at that point? Am I right that that had already happened? The record I believe is that Mrs. Rodgers had come to speak to her but it's unclear to me whether or not that was before or after she had spoken with the police officer. Right, but it had happened before she filed the formal report is my question. I believe so, Your So absent a protected speech, the plaintiff's claim fails as a matter of law and the court should have granted the defendant's motion under Rule 50B. The second tangential issue that I'd like to address is the court's determination with respect to plaintiff's due process claim and how it impacted the jury instruction and how it impacts whether or not the plaintiff has a one-year contract. In this case, the court did grant the defendant's Rule 50A motion determining that plaintiff failed to state a due process claim because this case involves an extension of an ongoing employment contract by a superintendent. Under Illinois law, there are two types of contracts that superintendents can have. A one-year contract or a multi-year contract referred to as a performance-based contract. The school code in Article 10 and Section 23.8 puts a restriction on the authority of a Board of Education to extend an ongoing superintendent's contract unless there has been a determination that they have met the goals and indicators which are contained within the contractual agreement and which are required by law. Here, as set forth in the short appendix pages 12 through 13, the district court determined that the plaintiff could not demonstrate a property interest as a Board of Education lacked the lawful authority to extend her employment agreement based upon its failure to find that the goals existed. Once the court made that determination, the sole adverse action that was set forth in the complaint and argued by the plaintiff at trial no longer existed. There was nothing to rescind because from a legal perspective, the extension never existed. It was determined by the court to be void ab initio, which means it never existed under Illinois law. So in order for a constitutional court to... You've just said, as you said in your brief, that the district court determined that the extension was void. Could you show me where the district court said that? Sure, Your Honor. So if you look to pages 12 and 13 of the short appendix that we follow with our brief, in the last paragraph and going on into the next page, what the court is discussing is there were specific requirements, so let me say this, superintendent requirements, and those were not gone over. Performance requirements. Performance requirements is what she's discussing. And then she states that they didn't do it properly while conceding that they have an ability to extend contracts. The court is determining that they didn't do it properly, which is in line with the argument that had been presented by... Counsel, you specifically stated in your brief that the district court found this to be void. That's a legal term of particular import, and so I look to see where the district court said that. I couldn't find it. I'm asking you to point me to where the district court found that. Your Honor, the district court in reciting its opinion did not use the word void. No, it didn't. It didn't use anything similar to it, and yet your brief insists that it did. You can see why that kind of advocacy doesn't sit well with a court. Yes, your Honor, and I apologize. I think that we were trying to present it to the court as representative of the argument that was raised and why the court would have made the determination that it did, because that was the argument that was being presented to the court, but I see your Honor's point with respect to that matter. With respect to that same issue, your Honor, and I don't want to continue down a path that your Honor fixes untoward, but we also set forth an argument that once the court threw out the due process claim, from our perspective, the reasoning of the court was it was throwing out the due process claim because the board didn't do it right, which means they didn't have the authority to do it. So from our perspective, that was an argument that was presented to the court arguing the contract extension is void because it doesn't meet the requirements of law, but yet the court then turned around and entered a jury instruction which specifically told the jury that the rescission of the contract was the adverse employment action. It didn't ask the jury to find whether or not it was adverse, but in the same breath, the court had thrown out the due process claim by determining that it did not meet the contours of Illinois law. So we believe that when those two things get compounded, the jury instruction that was given here was inaccurate because those two things can't exist together. If the contract extension didn't exist because it was void abnatio, then it couldn't have caused a harm and it couldn't have been an issue that the jury should have been instructed upon. So at that point, and since that was the only adverse action that was set forth by the plaintiff, there was nothing further for the jury to decide on that issue and the court should have thrown it out anyways, but in any event, the jury instruction was contradictory to what was otherwise presented to the court. And for those reasons, your honors, we will request that the court reverse the decision of the court as requested in our brief and I'll reserve the remainder of my time. Good morning, your honors. May it please the court. Mr. Davis. Yes, your honor. Good morning, your honor. May it please the court. My name is Jerome Davis. I would like to start with your honor is respectfully my belief that the court lacks jurisdiction to hear this matter as we stated in our brief and then our jurisdictional statement. Counsel, can I ask you a question about jurisdiction? Your brief focuses heavily on whether you think the Rule 50, the renewed judgment from that as a matter of law, was timely or not and you calculate the time to file the appeal as running from when you think that motion was denied in the minute entry. My question is, do you dispute that the Rule 59 motion was timely filed? Because your argument about the timing of the Rule 50 motion really doesn't matter because 59 motions also told the time. Yes, your honor, that's a good question and we acknowledge that the, on November 14th, they filed a repeat for the same Rule 50B motion with regard to count one and we believe that that is what the court disposed of on, I'm sorry, December 4th. As far as the Rule 59 motion that was also filed, the important point there is that motion was filed after the court disposed of the Rule 50B motion and it's our view that the filing of the Rule 59 motion could not retold the time that the appeal deadline was triggered when the court on December 4th said, I'm done with this, I've made my ruling, I'm not going to change my ruling, and she disposed of the then pending last post-judgment motion. We believe that if the opponents, if the appellants are able to piecemeal file a 59 motion and then extend this appeal deadline, that that would run afoul of the established principle that you only get one post-judgment motion and that you can't, via successive appeals, continue to extend the jurisdictional and mandatory appeal deadline. We believe that 50B says you may file a Rule 59 motion at the same time you file your Rule 50B motion and we know in Rule 50, it uses the term may, but actually courts have ruled it's a must and we believe that the Rule 59 motion should have been filed with the Rule 50B motion and since they didn't do that and the court disposed of the Rule 50B motion, they don't get to come back and then follow Rule 59 motion and extend the time. And further, Your Honor, with regard to jurisdiction, we believe that the Supreme Court is clearly distinguished between rules that are mandatory for A1A is a mandatory rule, 30-day rule, because it's filed in 2107, was created by Congress, and we think the case law is clear that we cite not breach and I won't repeat here that they filed a post-judgment motion, the court disposed of the post-judgment motion, and so the clock which was told between November 14th and December 4th, 2018, was re-triggered. Now I'd like to talk about counsel's argument regarding the speech and saying that the speech did not raise a matter of public concern. We discussed in our brief at page 18 to 22, we discussed the content requirement articulated by the Supreme Court in Connick and what they indicated in Connick was that speech that relates to a governmental official and how he or she is doing their job is protected speech. Speech that relates to potential fraud is protected speech. Speech that relates to the management of public resources. We think and we agree that you don't look just at the general category of the speech but the actual words and in the report that was made by Dr. Adams, she talked about being threatened with physical violence because she asked for an audit that included Mr. Rogers. We think that goes directly to how Mr. Rogers was doing his job. She also indicated that the reason she wanted the audit was because she was concerned about potential fraud and she also indicated that one of the reasons she made the police report wasn't only for self-protection was because she felt Mr. Rogers had something to hide when he wanted to expose this matter to the public. She wasn't only concerned about her personal well-being and counsel focuses a lot on that but she was talking about matters that are quintessentially matters of public concern and your honor asked a question about the timing and I want to make clear what happened is the police came to visit Dr. Adams on July 10th. The incident occurred on July 9th with Tyrone Rogers and the threat. Shortly after meeting with the police, Janet Rogers, Mr. Rogers' spouse, came in and told her she wanted to put on the agenda disciplining the superintendent. We also have in the record that Janet Rogers was informed by Tyrone Rogers the night before that Dr. Adams had made a police report against him for threatening her. And so even though Dr. Adams didn't formally file a complaint, a report was made on July 10th and she did say in that report, I asked for an audit and Mr. and I don't want to pursue it at this point. I want to see if we can work it out internally. But she did engage in speech at that point. The reason why I asked the question about Mrs. Rogers, it seems to me that if the purpose of the police report was, as you say, to bring to light the board's financial improprieties, as opposed to seeking protection from the potential of Mr. Rogers' violence against her, there would have been every reason for her to mention that another board member had also threatened her, although not physically. And she did not mention Janet Rogers in a report. She only mentioned Mr. Rogers and kind of incidentally mentioned that the reason for the threat was the proposed audit. Actually, Janet Rogers came after she met with the police on July 10th. Before she filed the official police report, am I correct? I'm sorry, Judge. I thought there was a distinction between her verbal conversation with the police and then her decision after speaking with her family over the weekend to file the formal report. We believe both reports are protected speech. The first report on the 10th and the report on the 13th. We don't distinguish between them. And Janet Rogers, she did say that one of the reasons she decided after talking with her family over the weekend to file a report is because after Janet Rogers, she saw the way, quote, things were going to go. And after Janet Rogers had came in, as you say, threatened her with disciplinary action, she wanted to document what was going on in the district. She wanted to make sure that every worker, public employee conscientiously doing a job was being subjected to this. So she did state that, Your Honor, and we weren't allowed to go too extensively into that matter because it was a motion to eliminate. But she did state that that was part of her motivation for deciding on the 13th to actual report. And so we believe the speech was definitely protected speech. And it related to a matter, I think the simplest way to look at it is to ask the question, is this the kind of speech that we want more of? Or is there some compelling or rational reason why the district should have be allowed to have elected public official threaten a public employee because she wants to do an audit to protect public money and then have that employee subject to retaliation if she then speaks about what happened? And if the test that counsel is advancing is adopted, at any time a public employee has a personal interest that the speech wouldn't be protected, then I think society would suffer grievously because that would almost eviscerate the First Amendment protection. Now, as far as the extension, Judge Easterbrook noted astutely that nowhere did the court rule that the extension was invalid, number one. Number two, this issue is a diversion because it's obvious under the law that on a 50-A motion, the judge is not there deciding factual matters. And the issue of whether or not there were goals that were met and whether the board determined that the goals were met, those are factual issues. And in fact, counsel recognized that at Docket 141, page 9, their proposed jury instruction, they cited Judge Coleman's summary judgment opinion, Docket 127, page 12, where she said this was a factual issue. So counsel knew this was a factual issue, it couldn't be decided by the court, and there was no way Judge Coleman made that decision. Further, with regard to the contradictory jury instruction, Judge Coleman at Docket 186, transcript 907 and 908, indicated the reason she wasn't going to give the instruction was because it would confuse the jury, based on the evidence that had come in and then, quote, emphasized that trial. It would totally confuse the jury, and so counsel is now trying to say that by not giving the instruction, she confused the jury. But in fact, she was protecting the jury from confusion. Further, the things about, where they say the extension was mentioned multiple times, are their instructions. Again, Docket 141, their proposed instructions, 23 and 26, the instructions Judge Coleman adopted were almost verbatim their instructions. So counsel can't have it both ways. They can't offer these instructions, then ask the court to enter an instruction contradicting their own instruction, and then say because the court didn't do it, it confused the jury. So we believe that the court did the right thing in not entering the instruction, and we don't believe that anything was contradictory. Further, and finally, we state in our due process matter, under the holding of this court, Dr. Adams had a legitimate entitlement upon the board voting to give her a contract extension, and instead, Judge Coleman focused on the contract, and whether the contract was a source of due process, and didn't really focus on the fact that, irrespective of the contract, the due process cause lay in the fact that the board voted to give her a extension in a duly board meeting, legal board meeting, and that was enough for due process to attach. And finally, Judge Hoskins and Kubiak are quite easily distinguished in both of those cases. The form, they made internal grievances. The content, they didn't make any issue regarding matters regarding management, or policies, or conduct of government officials, and the context was in the form of a personal confrontation and grievance. As we point out in our briefs in pages 18 through 26, that is in opposite this case here. The content of the speech was on a matter of public concern in the form. Here, this case is analogous to Crystal's case. Dr. Adams knew she was jeopardizing her career, and her position in employment, when she decided to make the police report, but she made it anyway, because she felt the need, she felt compelled to make the public aware, as she said, what was going on in the district. So, we think that the speech at issue here, if you look at the content, the form, and the context, further on the context, there was no personal animus between Dr. Adams and any of the board members. This is not a situation where she had a personal state, where her job activity, she was being accused, like in Connick, where the speech didn't come about until she had an issue with a transfer that she didn't want, or a nap, where the speech only came about after the teacher received a bad performance review. The speech at issue here, Dr. Adams' speech, the context in which it occurred, was not one of a personal grievance, and this was not an issue of a personal grievance. And so, I will reserve any other time I may have, Judge. As you know, we're the cross appellate also, and I'd like to talk about our cross appeal, unless your honor has other questions. Certainly, counsel. Counsel, if you want to address the cross appeal, now's the time to do it. Okay, thank you, your honor. We believe that Judge Coleman erred because she grossly failed to apply the proper standards, and she made decisions that were arbitrary, and specifically, we believe that Judge Coleman erred because she didn't apply the proper standards that this court has said for setting a market rate for the attorney fees in the load stock. This court has said, consistent with Blum from the Supreme Court, that the market rate is the rate for a comparable attorneys in the district. We gave Judge Coleman two co-operators in cases she had previously ruled on, and Judge Coleman first said she applied those co-operators in reaching the market rate. However, she made a mistake in that she used the numbers. We pointed that out, and at that point, she just eschewed dealing with the market rate and just said, well, I'm going to give you the actual rate, even though it was known that the actual billed rate was a modified contingency rate that was below the market rate, and so we believe the court erred by not applying the precedent in Hensley when the court did not look at the success achieved in comparison to the scope of the litigation as a whole and the amount of time expended to achieve that result, which she did do in one of the co-operator cases that we cited. She didn't do here, and Judge Coleman said, well, I don't just have to deduct 25% from your fees because I did it in that case in your case, and that's not what we were asking. What we were saying is that by applying the proper standard advanced in Hensley, you would avoid grossly disparate results, which is what happened here. Mr. Davis? Yes. Mr. Davis, you have one minute remaining. Thank you, Your Honor. Finally, the court also ignored a binding president when she struck the time for the Harvey defendants, even though the court in Hensley said, if the case's unsuccessful claim is based on the same co-operative facts or legal theory, it's compensable. And finally, the court, we believe, arbitrarily adopted the bad-faith arguments of the appellants and struck time that they say was excessive and vague, and we believe their arguments, respectfully, were not in good faith because, as we showed, the time entry and the amount of time was almost identical to what they had done themselves. So we asked the court, Your Honor, to affirm the underlying judgment if, Your Honor, you decide you have to defer to the fee petition. Thank you, counsel. Mr. Gleason, anything further? Just briefly, Your Honor. I'd like to jump in with respect to the First Amendment question again. If I understood counsel's argument, he was saying because they were critical of how a board member was doing in their job that that makes the speech protected as a matter of law. I would just point out to the court that in Connick v. Myers, a lot of the comments that were made were of an elected official than the acting district attorney, and that's similar to both Kokinas v. Ivkovich, where the dispute was against the police chief and how he was doing his job, and it was determined based on the context and form not to be protected under the First Amendment, and also the Milwaukee Deputy Sheriff Association v. Clark case, where the comment was reflective of a disagreement that the individual had with Sheriff Clark, who's an elected official. And I think the Milwaukee Deputy Sheriff's case v. Clark kind of folds into what we have here, is counsel is stating that Dr. Adams was attempting to expose a potential fraud to the public. The problem with that statement is in the trial record, that testimony does not exist. In the brief that Dr. Adams filed before this court, she's relying on those testified to before the district court. Furthermore, he contends that their counsel's contending that there was fraud, but what they were talking about was hiring of a forensic auditor. By law, under the school code, Section 5-3-7, the school is audited every year. So this is a separate and distinct audit that we're talking about. But the audit was at an RFP stage, meaning they were asking for auditors to come in. There was nothing that was known for her to report at that time. And in fact, her testimony at trial in Docket 1-80-75 and Docket 1-81-214 was that she wanted to get an audit to find out where the district stood financially, and to ensure that the information the board was receiving was accurate, and to make sure that the financial procedures were in place. There was no fraud to be even reported. But that aside, that is not what the context and content of her complaint were. Similar to how they tried to bend that argument in Clark by saying that the statement against the sheriff implicated his use of officers to protect him while he was off duty, the Seventh Circuit saw through that and said really what the content and context was was a personal challenge between individuals. Much like here, this was a personal issue that Dr. Adams was seeking protection from with respect to Mr. Rogers. Under a long line of cases, that is not protected speech as a matter of law, and therefore the First Amendment claim must fail. Just briefly to respond to the cross-appeal portion with respect to attorney's fees, the district court plainly didn't abuse its discretion. It provided Dr. Adams' counsel with the very rate that he set forth that he is his market rate, and was in fact the rate that was charged to the plaintiff in the case. There's nothing that could be further from an abusive discretion, and although we argued that we thought the rate should actually be lower, the district court did not abuse its discretion in making the determination it did. With that, we'll rest on the remainder of our arguments and the briefs that we filed before the court. Thank you, Your Honors. Thank you, counsel. Case is taken under advisement. Our third case of the day is Liscano against Insul. Mr. Smith. Thank you, Judge Easterbrook, and may it please the court, counsel. Mr. Liscano's petition sits squarely within this court's precedent governing